COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                                    SUPERIOR COURT DEPARTMENT OF
                                                 THE TRIAL COURT OF THE
                                                 COMMONWEALTH
                                                 CIVIL ACTION NO. 1583CV00945

Christopher Dawson............, Plaintiff(s)

vs.

Ocwen Financial Servicing, LP Defendant(s)

## SUMMONS

To the above-named defendant: Ocwen Financial Corporation c/o Timothy M. Hayes Executive Vice President, General Counsel and Secretary.

You are hereby summoned and required to serve upon Christopher Dawson plaintiff attorney, whose address is 375 Wickenden St. #207, Providence, RI 02903, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Brockton either before service upon plaintiff attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant Esquire, at Brockton the ......10th...... day of December............, in the year of our Lord Two thousand and ...15...... .

                                                                CLERK

**NOTES**
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. To the plaintiff's attorney: please circle type of action involved-Tort-Motor Vehicle Tort-Contract-Equitable Relief-Other.

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on ................................., 20   , I served a copy of the within summons together with a copy with a copy of the complaint in this action, upon the within-named defendant   , in the following manner(See Mass. R. Civ. P. 4(d)(1-5)):...........................................................

Dated: .                ,20   ..........................................

**N.B.    TO PROCESS SERVER:-**
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

                                                    ,  20

NOTICE TO DEFENDANT.-You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's office at Brockton.

COMMONWEALTH OF MASSACHUSETTS
PLYMOUTH COUNTY                                SUPERIOR COURT
                                               Case No. _____

CHRISTOPHER DAWSON
575 Wickenden Street, #207
Providence, RI 02903
                    Plaintiff

v.

LITTON LOAN SERVICING, LP
c/o its Registered Agent:
Corporation Service Company
84 State Street
Boston, MA 02109

OCWEN FINANCIAL CORPORATION
c/o Timothy M. Hayes, Executive Vice President,
General Counsel and Secretary
1661 Worthington Road, Suite 100
P.O. Box 24737
West Palm Beach, FL 33409

OCWEN LOAN SERVICING, LLC,
c/o its Registered Agent:
Corporation Service Company
84 State Street
Boston, MA 02109
                    Defendants

## COMPLAINT

### Parties and Jurisdiction

1. The Plaintiff Christopher Dawson (hereafter "Dawson") is a natural person that resides at 575 Wickenden St., #207, Providence, RI 02903.

2. The Defendant Litton Loan Servicing LP (hereafter "Litton") is a limited partnership business entity whose Massachusetts Registered Agent is Corporation Service Company,

84 State Street, Boston, MA 02109.

3. The Defendant Ocwen Financial Corporation is a business entity located at 1661 Worthington Road, Suite 100, P.O. Box 24737, West Palm Beach, FL 33409.

4. The Defendant Ocwen Loan Servicing LLC is a business entity whose Massachusetts Registered Agent is Corporation Service Company, 84 State Street, Boston, MA 02109.

5. This action is properly brought before this Court as the real property which is the subject of this action is situated in Plymouth County, Massachusetts.

6. Dawson is subject to the jurisdiction of this Court as he has an interest in Massachusetts real property.

7. Defendant Litton is subject to the jurisdiction of this Court pursuant to the Massachusetts long-arm statute M.G. L. c.223A sec. 3 as it transacted business deliberately by instituting a foreclosure proceeding in Massachusetts as to the Massachusetts real property and took title to the property it sold at foreclosure.

8. Defendants Ocwen Financial Corporation and Ocwen Loan Servicing LLC (collectively "Ocwen") are the successors to Litton interests herein.

### Facts

9. A MORTGAGE dated November 6, 2006 on the property at 12 North Dr., Marion, MA (hereafter "Mortgage") was given by Dawson to Mortgage Electronic Registration Systems, Inc. as nominee for Aegis Wholesale Corporation (hereafter "Aegis") to secure a mortgage note of even date in the amount of $1,400,000 (hereafter "Note").

10. A JUDGMENT, issued August 24, 2010, to foreclose the MORTGAGE was recorded at Book 33645 Page 178 on December 31, 2010 at Book 39489 Page 138 in the Plymouth County Registry of Deeds.

11. A FORECLOSURE DEED (hereafter "Foreclosure Deed"), dated and executed on September 17, 2010, was recorded at Book 39489 Page 143 in the Plymouth County Registry of Deeds.

12. Beginning in November of 2010, Dawson began a series of unsuccessful lawsuits in attempt to expose and recover from the frauds and other wrongdoings of Litton that Dawson alleged with respect to the Litton's ultimate foreclosure on Dawson's home.

13. Additionally, Defendant Litton served a NOTICE TO QUIT AND VACATE PREMISES on Dawson's tenant at the subject property on or about July 29, 2011.

14. EXECUTION FOR POSSESSION of the subject property was issued by the Wareham District Court in favor of defendant Litton on or about March 9, 2012.

15. Dawson unsuccessfully attempted to appeal of his loss of ownership and possession of the subject property in early 2013; but his appeal efforts were unsuccessful.

16. Dawson became resigned to the fact that he could not recover from the losses he sustained in connection with his purchase and ultimate loss of the subject property.

17. However, during the past several month's, Dawson learned about the following facts that did not exist at the time that Dawson attempted to recover the damages he alleges he has sustained as the proximate result of Litton's wrongful acts and conduct regarding the servicing, foreclosure, and summary process actions related to his former home.

    (a) Along with authorities in 49 states, and the District of Columbia, the Consumer Financial Protection Bureau filed an order in December of 2013 (hereafter "Order") requiring Ocwen to pay for years of systemic misconduct in mortgage servicing;

    (b) The misconduct included unfair shortcuts, unauthorized fees, deception, illegal foreclosures, and other illegal practices;

    (c) The misconduct resulted in a settlement with Ocwen;

    (d) The settlement involved Ocwen and two companies recently purchased by Ocwen: Litton Loan Servicing LP and Homeward Residential Holdings LLC;

    (e) Dawson's loan was serviced by Litton and Dawson's home was lost to foreclosure between Jan. 1, 2009 and Dec. 31, 2012; and

    (f) Dawson did not qualify for compensation under the settlement only because his loan was more than the threshold limit of $729,750.

18. The Ocwen settlement exposed and evidenced facts and circumstances that Dawson could not have reasonably known at the times he sought relief for Litton's wrongdoing in connection with the foreclosure and loss of his home. Specific instances and practices that were operative in this case were the following:

    (a) Litton did not disclose it was required to withdraw any pending foreclosure actions in which filed affidavits were Robo-signed or otherwise not accurate, as is the case here, specifically with respect to their foreclosure deed;

3.

(b) Litton has not disclosed or identified the allocation of the foreclosure sale proceeds in the amount of $1,716,966.40 that were received to satisfy the first mortgage obligation in the original principal amount of $1,400,000.

(c) Litton had not disclosed that in part the settlement with the Federal Government addressed a systemic practice of charging unauthorized fees;

19. In fact, Dawson has discovered following facts and circumstances by and through information obtained and presented to Dawson by and through the state and federal governments' investigations and actions which precipitated the recent settlement agreement as referenced in the Order.

20. The deceptive, hidden, and elaborately omitted material facts and circumstances giving rise to this complaint include, but are not limited to , the following set of facts and circumstances which have surfaced as the proximate result of the aforementioned Order requiring Ocwen to pay for years of the subject systemic misconduct in mortgage servicing by Litton.

21. Specific examples of the Litton fraud exposed by the settlement with Ocwen pursuant to the Order are:

(a) The subject Foreclosure Deed is based on a deceptively "naked" assignment by Mortgage Electronic Registration Systems which fails to identify or name a Lender or "nominee"; and bear signatures of known robosigners;

(b) The assignment is executed by a known robosigner, Marti Noreiga;

(c) Litton sold the subject property to itself at auction by and through a MEMORANDUM OF TERMS AND CONDITIONS OF SALE which (i) was executed by a Kevin Morris of undisclosed legal capacity to act on behalf of Litton, and (ii) was made without payment of the required $50,000 deposit;

(d) The MORTGAGEE'S AFFIDAVIT filed by Litton with the Massachusetts Land Court on January 25, 2010 states that Litton is "<u>one who is authorized to act by and on behalf of either the Mortgagee or one holding under the mortgage</u>" but Litton does not designate whether Litton is the "<u>Mortgagee of the Mortgage which is the subject of this proceeding</u>"; or one "<u>who holds under the mortgage</u>";

(e) The alleged copy of the subject Note, previously provided by Litton, bears no endorsements of any kind below the signature of Dawson, but has an ALLONGE TO NOTE affixed to it which is undated and bears both a special and blank endorsement by Aegis.

4.

(f) Neither the defendants, nor any of the defendants agents or attorneys, have ever produced the original Note in this matter to verify its existence and/or it owner.

22. The Order does not immunize Ocwen or Litton from Dawson's rights to take further actions against Ocwen or Litton.

23. Dawson has not received any payment(s) from Ocwen pursuant to any settlement or the Order.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

24. Plaintiffs restate and incorporate by reference each of the above paragraphs as if fully set forth herein.

25. As set forth above, Defendant Litton has materially breached the terms of the subject Mortgage, specifically paragraph 22 governing invocation of the power of sale.

26. Defendant Litton has materially breached the terms of the subject Mortgage when it failed to comply with subparagraph c by failing to provide complete accounting of the $316,000 excess over the underlying note amount of $1.4 million dollars and disclosing application thereof.

27. Defendant Litton has materially breached the terms of the subject Mortgage by failing to charge reasonable fees to the financial detriment of the Plaintiff.

28. Litton's said acts and omissions have damaged Plaintiff.

## SECOND CLAIM OF RELIEF
### Breach of Implied Covenant of Good Faith and Fair Dealing

29. Plaintiff restate and incorporate by reference each of the above paragraphs as if fully set forth herein.

30. The defendants owed an implied covenant and duty to the plaintiff to exercise good faith and fair dealing in the conduct of their foreclosure and eviction actions against the plaintiff.

31. By way of their acts, conduct, omissions, and concealment of material facts detailed above, the defendants have breached this covenant and duty.

5.

32. Said actions constitute wanton, malicious, and oppressive conduct warranting enhanced compensatory damages.

33. As a direct and proximate cause and result of the foregoing, the plaintiff has suffered, and continue to suffer, substantial harm and damages.

### THIRD CLAIM OF RELIEF
### Violations of M.G.L. 93A

34. Plaintiff restate and incorporate by reference each of the above paragraphs as if fully set forth herein.

35. This is an action and claim for relief which is brought pursuant to M.G.L. 93A for damages and injunctive relief.

36. Plaintiff is a "person" within the meaning of M.G.L. 93(A)(1)(a).

37. The actions of Defendant Litton constitute unfair and deceptive practices engaged in by a business within the course of trade or commerce within the meaning of G.L. 93(A)(1)(b).

38. The presuit notice provisions of M.G.L. 93(A)(9)(3) are not applicable as to Defendant Litton as said Defendant does not maintain a place of business or keep assets within the Commonwealth of Massachusetts.

39. Pursuant to M.G.L. 93(A)(9)(1), Plaintiff is entitled to seek remedies of damages and injunctive relief.

40. As a direct and proximate result of the unfair and deceptive practices of Defendant Litton as set forth above, specifically failure to provide accounting as to the $316,000 excess over the underlying note amount of $1.4 million, charging unreasonable fees in connection with the foreclosure sale of the subject property, and failure to disclose the investigation of their business practices by the federal government at all relevant times to this complaint. Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, the Plaintiffs request this court to award the following relief:

A: As to their FIRST CLAIM FOR RELIEF an award of money damages, including all direct, indirect, consequential, and foreseeable damages, disgorgement of past, present, and future monies related to the defendants' dealings with the plaintiff, and costs, and attorneys' fees;

B. As to their SECOND CLAIM FOR RELIEF an award of money damages, including all direct, indirect, consequential, and foreseeable damages, disgorgement of past, present, and future monies related to the defendants' dealings with the plaintiff, and costs, and attorneys' fees; and

C. As to their THIRD CLAIM FOR RELIEF, the entry of an award of money damages including any multiple of damages as provided by M.G.L. 93A, costs, and attorneys' fees.

Dated this 23rd day of September, 2015.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully Submitted,
Christopher Dawson,
By his attorney,

Date: September 23, 2015

Gregg S. Tarayan, Esq.
BBO# 674885
60 Island Street
Lawrence, MA 01840
(978) 566-9153
gtarayan@gmail.com

**GREGG S. TARAYAN**
ATTORNEY AT LAW
60 ISLAND STREET
LAWRENCE, MA 01840
(978) 566-9153

---

June 25, 2015

Christopher A. Cornetta, Esq.
Houser & Allison, APC
45 School Street, 2nd Floor
Boston, MA 02108

    Re:    **Christopher Dawson; 12 North Drive, Marion, MA 02738**

Dear Attorney Cornetta,

    This letter is in reply to your response to my client's demand letter dated March 9, 2015 under the provisions of Massachusetts General Laws, Chapter 93A, Section 9 of the Consumer Protection Act.

    As you recall, your response to the demand letter consisted of a general denial of any wrongdoing on the part of your client.

    In reply to your letter, please note the following specific instances of unfair or deceptive acts and practices which constitute your client's violations of M.G.L. c. 93A. Also, please note, again, that the following facts and circumstances did not exist at the time that my client attempted to recover the damages he has sustained as the proximate result of your client's wrongful acts and conduct regarding the servicing, foreclosure, and summary process actions related to his former home:

    (a) Along with authorities in 49 states, and the District of Columbia, the Consumer Financial Protection Bureau filed an order in December of 2013 (hereafter "Order") requiring Ocwen to pay for years of systemic misconduct in mortgage servicing;

    (b) The misconduct included unfair shortcuts, unauthorized fees, deception, illegal foreclosures, and other illegal practices; and

    (c) The misconduct resulted in a settlement with your client for its wrongdoing.

    It is the above-referenced "deception, illegal foreclosures, and other illegal practices" that precipitated the recent settlement agreement as referenced in the Order, and that that also form the crux of my client's 93A claims. Again, your client's dealings with mine were part of the "deception, illegal foreclosures, and other illegal practices"

Christopher A. Cornetta, Esq.
June 25, 2015
Page 2 of 3

that were ultimately exposed by the state and federal investigations. These material facts and circumstances, that your client knowingly concealed, included all of the following:

> (i) The subject Foreclosure Deed is based on a deceptively "naked" assignment by Mortgage Electronic Registration Systems which fails to identify or name a Lender or "nominee." This questionable practice, for example, has recently been deemed illegal by the "Greenleaf" case decided by the State of Maine Supreme Court;
>
> (ii) One subject assignment of mortgage is executed by a known robosigner, Marti Noreiga. Marti Noriega was identified in Exhibit C to the well-recognized FORENSIC EXAMINATION OF ASSIGNMENTS OF MORTGAGE RECORDED DURING 2010 IN THE ESSEX SOUTHERN DISTRICT REGISTRY OF DEEDS prepared By MARIE MCDONNELL, PRESIDENT MCDONNELL PROPERTY ANALYTICS, INC. as a robosigner for your client Litton.
>
> (iii) Litton sold the subject property to itself at auction by and through a MEMORANDUM OF TERMS AND CONDITIONS OF SALE which (i) was executed by a Kevin Morris of undisclosed legal capacity to act on behalf of Litton, and (ii) was made without payment of the required $50,000 deposit;
>
> (iv) The MORTGAGEE'S AFFIDAVIT filed by Litton with the Massachusetts Land Court on January 25, 2010 states that Litton is "one who is authorized to act by and on behalf of either the Mortgagee or one holding under the mortgage" but Litton does not designate whether Litton is the "Mortgagee of the Mortgage which is the subject of this proceeding"; or one "who holds under the mortgage";
>
> (v) The alleged copy of the subject Note, previously provided by Litton, bears no endorsements of any kind below the signature of Dawson, but has an ALLONGE TO NOTE affixed to it which is undated and bears both a special and blank endorsement by Aegis. In fact, the allonge attached to the subject $1,400,000 note dated November 6, 2006 has BOTH a special endorsement and a blank endorsement made by the same person - and, additionally, the endorsement stamps are "robo-signed." The original Note in this matter was never produced to verify its existence and/or its owner.
>
> (vi) The subject complaint for foreclosure recorded with the registry of deeds shows the mortgage was given to "Mortgage Electronic Registration Systems, Inc." and not to Litton. The foreclosure deed itself, and it's affidavit, were executed by a recognized robo-signer, Debra Lyman, who also is employed as an Assistant Secretary of Mortgage Electronic Registration Systems, Inc.

Christopher A. Cometta, Esq.
June 25, 2015
Page 3 of 3

    It is the fact that your client intentionally and knowingly concealed the ongoing state and federal investigations that were taking place during the course of my client's previous wrongful foreclosure and eviction actions which forms the basis of my client's valid claims under M.G.L. c. 93A. By intentionally concealing the ongoing investigations, which were irrefutably material to the disposition of my client's claims, your client obtained prior judgments which should be vacated as being the product of your client's misrepresentation and fraud.

    As a result of these circumstances, I am requesting that your client reconsider its position and make a good faith offer to settle this matter without further litigation.

Very truly yours,

Gregg S. Tarayan, Esq.

**GREGG S. TARAYAN**
ATTORNEY AT LAW
60 ISLAND STREET
LAWRENCE, MA 01840
(978) 566-9153

---

February 23, 2015

Timothy M. Hayes, Executive Vice President
OCWEN FINANCIAL CORPORATION
1661 Worthington Road, Suite 100
P.O. Box 24737
West Palm Beach, FL 33409

Corporate Secretary
LITTON LOAN SERVICING, LP
4828 Loop Central Dr.
Houston, TX 77081

Corporate Secretary
OCWEN LOAN SERVICING, LLC,
4828 Loop Central Dr.
Houston, TX 77081

Re: **Demand Letter pursuant to Massachusetts General Laws, Chapter 93A, Section 9, the Consumer Protection Act**

Dear Timothy M. Hayes, Executive Vice-President of OCWEN FINANCIAL CORPORATION; Corporate Secretary, LITTON LOAN SERVICING, LP and Corporate Secretary, OCWEN LOAN SERVICING, LLC:

Please be advised that I represent Christopher Dawson (hereafter "Dawson") in this matter.

Mr. Dawson is the former owner, mortgagor, and resident of the property (single-family home) at 12 North Drive, Marion, MA. On August 27, 2010, his home was foreclosed by the servicer and first mortgagee, Litton Loan Servicing (hereinafter "Litton").

I am writing to you under the provisions of Massachusetts General Laws, Chapter 93A, Section 9, the Consumer Protection Act. I am writing to request relief on behalf of my client as outlined in that statute; pursuant to the following unfair and deceptive acts and practices:

During the past several months, Dawson has learned about the following facts that did not exist or were not known to him at the time that Dawson attempted to recover the damages he has sustained as the proximate result of Litton's wrongful acts and conduct regarding the servicing, foreclosure, and summary process actions related to his former home.

M. Hayes, Executive Vice-President
February 23, 2015
Page 2

(a) Along with authorities in 49 states, and the District of Columbia, the Consumer Financial Protection Bureau filed an order in December of 2013 (hereafter "Order") requiring Ocwen to pay for years of systemic misconduct in mortgage servicing;

(b) The misconduct included unfair shortcuts, unauthorized fees, deception, illegal foreclosures, and other illegal practices;

(c) The misconduct resulted in a settlement with Ocwen;

(d) The settlement involved Ocwen and two companies recently purchased by Ocwen: Litton Loan Servicing LP and Homeward Residential Holdings LLC;

(e) Dawson's loan was serviced by Litton and Dawson's home was lost to foreclosure between Jan. 1, 2009 and Dec. 31, 2012; and

(f) Dawson did not qualify for compensation under the settlement only because his loan was more than the threshold limit of $729,750.

The Ocwen settlement exposed and evidenced facts and circumstances that Dawson could not have reasonably known at the times he sought relief for Litton's wrongdoing in connection with the foreclosure and loss of his home. In fact, many facts and circumstances that were previously contested by Litton were confirmed by and through information obtained and presented to Dawson by and through the state and federal governments' investigations and actions which are exemplary of the types of wrongdoing that precipitated the recent settlement agreement as referenced in the Order:

(a) The subject Foreclosure Deed is based on a deceptively "naked" assignment by Mortgage Electronic Registration Systems which fails to identify or name a Lender or "nominee";

(b) The assignment is executed by a known robosigner, Marti Noreiga;

(c) Litton sold the subject property to itself at auction by and through a MEMORANDUM OF TERMS AND CONDITIONS OF SALE which (i) was executed by a Kevin Morris of undisclosed legal capacity to act on behalf of Litton, and (ii) was made without payment of the required $50,000 deposit;

(d) The MORTGAGEE'S AFFIDAVIT filed by Litton with the Massachusetts Land Court on January 25, 2010 states that Litton is "one who is authorized to act by and on behalf of either the Mortgagee or one holding under the mortgage" but Litton does not designate whether Litton is the "Mortgagee of the Mortgage which is the subject of this proceeding"; or one "who holds under the mortgage";

M. Hayes, Executive Vice-President
February 23, 2015
Page 3

(e) The alleged copy of the subject Note, previously provided by Litton, bears no endorsements of any kind below the signature of Dawson, but has an ALLONGE TO NOTE affixed to it which is undated and bears both a special and blank endorsement by Aegis.

(f) Neither the defendants, nor any of the defendants' agents or attorneys, have ever produced the original Note in this matter to verify its existence and/or its owner.

It appears that Dawson was not included in the settlement through the Consumer Financial Protection Bureau because his first mortgage was in excess of the qualifying limits.

Obviously, the size of Dawson's first mortgage did not change the wrongdoing commitment by Litton and Ocwen (i.e. "years of systemic misconduct in mortgage servicing. The misconduct included unfair shortcuts, unauthorized fees, deception, illegal foreclosures, and other illegal practices.").

Despite Dawson's past litigations challenging Litton's standing and title to the property, Litton did not disclose the ongoing investigations that ultimately led to a settlement which demonstrated that 49 states and the federal government concurred with Dawson's wrongdoing claims against Litton. These are recorded documents that form the "core" facts in this case:

MORTGAGE (on property at 12 North Dr., Marion, MA - given by Christopher Dawson to Mortgage Electronic Registration Systems, Inc. as nominee for Aegis Wholesale Corporation to secure a note in the amount of $1,400,000 dated November 6, 2006): Recorded 11/08/2006 at 10:30 AM at Book 33645 Pages 178 - 193).

MORTGAGE (on property at 12 North Dr., Marion, MA - given by Christopher Dawson to JP Morgan Chase, N.A. to secure a home equity credit line in the amount of $300,000 dated November 17, 2006): Recorded 11/22/2006 at 10:07 AM at Book 33715 Pages 343-350).

MORTGAGE (on property at 12 North Dr., Marion, MA - given by Christopher Dawson to Elyahou Talasazan and Helena Talasazan to secure a note in the amount of $100,000 dated February 1, 2008): Recorded 02/07/2008 at 1:01 PM at Book 35581 Pages 5-7).

ASSIGNMENT OF MORTGAGE (of mortgage dated November 6, 2006 at Book 33645 Page 178): Recorded 03/29/2010 at 1:30 PM at Book 38368 Page 32. Assignment was from Mortgage Electronic Registration Systems, Inc. to Litton Loan Servicing, LP at 60 Livingston Ave., St. Paul, MN 55701-2322 without recourse, executed on February 17, 2010.

ORDER OF NOTICE (to Servicemen of intent to foreclose mortgage dated November 6, 2006 at Book 33645 Page 178): Recorded 06/29/2010 at 1:58 PM at Book 38680 Page 167.

M. Hayes, Executive Vice-President
February 23, 2015
Page 4

JUDGMENT (to foreclose mortgage dated November 6, 2006 at Book 33645 Page 178): Recorded 12/31/2010 at 10:26 AM at Book 39489 Page 138; (NOTE: Court signed off on judgment on August 24, 2010. However, the judgment was not recorded until December 31, 2010 - just before the CERTIFICATE OF ENTRY and FORECLOSURE DEED were recorded).

POWER OF ATTORNEY (given by Debra Lyman as Assistant Secretary of Litton et al [this POA is from two separate Litton entities] to Kevin Morris or Mark Harmon for the specified purposes of making entry and fore foreclosing the property at 12 North Drive, Marion, MA): Recorded 12/31/2010 at 10:26 AM at Book 39489 Page 139.

CERTIFICATE OF ENTRY (that Litton was allowed "peaceable and unopposed entry" to the property at 12 North Drive, Marion, MA) on August 27, 2010; Recorded at Book 39489 Page 141 at 10:26 AM on 12/31/2010

FORECLOSURE DEED (of mortgage dated November 6, 2006 at Book 33645 Page 178): Book 39489 Page 143; Executed on 09/17/2010; Grantor and Grantee were both Litton Loan Servicing, LP at 4828 Loop Ventral Drive, Houston, TX 77081; Sale amount was $1,716,966.40.

Additionally, the following are irrefutable facts:

1. The Foreclosure Deed and Affidavit were executed by Debra Lyman, a recognized robo-signer, who also is employed as an Assistant Secretary of Mortgage Electronic Registration Systems, Inc.

2. The allonge attached to the subject $1,400,000 note dated November 6, 2006 has BOTH a special endorsement and a blank endorsement made by the same person - and, additionally, the endorsement stamps are "robo-signed."

3. The subject complaint for foreclosure recorded with the registry of deeds shows the mortgage was given to "Mortgage Electronic Registration Systems, Inc." and not to Litton.

4. The foreclosure deed itself, and it's affidavit, were executed by a recognized robo-signer, Debra Lyman, who also is employed as an Assistant Secretary of Mortgage Electronic Registration Systems, Inc.

5. On or about December 31, 2010, Litton recorded a foreclosure deed in which both the Grantor and Grantee were Litton Loan Servicing, LP at 4828 Loop Ventral Drive, Houston, TX 77081. The amount paid by the Grantee was, allegedly, $1,716,966.40. The FORECLOSURE DEED was recorded on 12/31/2010 at 10:26 AM at Book 39489 Book 143 in the Plymouth County Registry of Deeds.

M. Hayes, Executive Vice-President
February 23, 2015
Page 5

    In aggregate, the many deceptive, hidden, and elaborately omitted material facts and circumstances by Litton et al together constitute an unfair and deceptive practice thus giving rise to this demand letter. As the direct result of the above unfair and deceptive practices my client suffered damages by way of loss of money, property and suffering severe emotional distress.

    Despite of the fact that his damages exceed this amount, my client is willing to resolve the matter outside of litigation for $250,000.

    Under the provisions of Section 9 Chapter 93A, I am providing you with the opportunity to make a reasonable written offer of settlement of this claim within 30 days. If you fail to make a good faith offer of settlement in response to this request, and my client institute a legal action, a court may award double or triple damages, attorney's fees and costs if the court finds in my client's favor.

Very truly yours,

Gregg S. Tarayan, Esq.

